JOSEPH J. BENTLEY *et al.*

*v.*

WILLIAM O'BRYAN *et al.*

*Filed at Springfield September 27, 1884.*

111 53
124 375

111 53
132 260

111 53
147 384

111 53
158 212

111 53
55a 492

111 53
59a 314

111 53
100a ⁵ 49
100a ⁴ 50

111 53
198 ⁵489

1. EVIDENCE—*judgment on distress for rent for defendant, to disprove tenancy.* A judgment in favor of the defendant in a proceeding by distress, on a plea simply denying indebtedness for rent, but not putting in issue the fact of a demise, is not admissible in evidence in another suit to disprove there was any tenancy between the parties.

2. FORMER ADJUDICATION—*no bar as to matter not made an issue.* To a distress warrant the defendant pleaded that he was not indebted in manner and form as alleged in said warrant, upon which issue was taken, but filed no plea denying the demise. A verdict and judgment were given for the defendant: *Held,* that the verdict and judgment did not estop the plaintiff in another suit from asserting that the defendant was his tenant.

3. MORTGAGE—*presumption that a deed is not a mortgage.* Where a deed for land on its face appears to be an absolute and unconditional conveyance, and is acknowledged and delivered, the law will presume, in the absence of proof showing the contrary, that it is what it purports to be,—an absolute conveyance.

4. SAME—*burden of proof on question whether a deed is or not a mortgage.* Where a warranty deed for land, absolute on its face, is claimed to be a mortgage, only, the party alleging such to be the character of the instrument must sustain his claim by evidence sufficiently clear and satisfactory to overcome the presumption of law that it is an absolute conveyance. Loose, indefinite and unsatisfactory evidence will not suffice.

5. ADMISSIONS—*of grantor after conveying, as against grantee.* The admissions and declarations of a grantor of land, made when the grantee is not present, can not be admitted in evidence to invalidate his deed or to affect his grantee.

APPEAL from the Circuit Court of Champaign county; the Hon. C. B. SMITH, Judge, presiding.

This was a bill in chancery, brought by Joseph J. Bentley and Benjamin Bentley, on February 20, 1883, against William O'Bryan and David Rice, to have their two certain deeds of conveyance of certain lands to William O'Bryan, dated December 7, 1878, declared a mortgage, and for leave to redeem from the same. The bill alleges, complainants, before making such conveyances, farmed said lands as partners; that they, being largely in debt, and unable to meet their liabilities, made an arrangement with O'Bryan, who was their surety on many of the debts, whereby he was to pay off such debts, and complainants were to convey to him said lands to indemnify him as surety, and to secure him in moneys advanced and to be advanced by him for the complainants, or whatever sum they might be indebted to him, O'Bryan; that complainants should have five years in which to pay O'Bryan the principal owing him, with interest, and that under such arrangement said lands were conveyed to said O'Bryan by deeds absolute upon their face, but in reality they were mortgages to secure said O'Bryan in his advances then and thereafter to be made, and that O'Bryan did, in pursuance of said arrangement, pay off most of complainants' said debts. The bill alleges various payments which were claimed to have been made by the complainants, and prayed that an account might be taken of what was due, and for leave to redeem from such conveyances. It also charged that O'Bryan, for the purpose of defrauding complainants, conveyed said lands to said Rice, on August 31, 1882, without the knowledge or consent of complainants, for $4200 in cash, and the assumption of a mortgage on the premises, of $2200. The bill also charged that O'Bryan claims to have leased the lands to complainant Joseph J. Bentley, and had commenced a proceeding by distress for rent claimed to be due, and had levied the same. The bill

prayed that all proceedings at law be enjoined, etc. Rice and O'Bryan both answered the bill, the latter claiming that the conveyances to him were absolute, and not as a mortgage to secure the payment of money, and that complainant Joseph J. Bentley remained on the lands as his tenant. Rice claimed as a purchaser for value, without notice that the deeds to O'Bryan were given to secure the latter, if such was the case, and claims that he informed the complainant Joseph J., of his intended purchase of such land from O'Bryan, and that Joseph J. said nothing about any claim to the property. The complainants afterwards filed their supplemental bill, which was amended so as to set up certain proceedings by O'Bryan to collect rent by distress, and a finding and judgment against the claim for rent as *res judicata,* upon the question of there being the relation of landlord and tenant between said Joseph J. and the said O'Bryan. The court sustained a demurrer to this amended supplemental bill. The cause was heard on the bill, answers, replication thereto, and proofs, and a decree entered dismissing the bill, and for costs against the complainants. From this decree the complainants bring the case to this court by appeal, and assign for error the sustaining of the demurrer to their amended supplemental bill, and the dismissal of such bill and the original bill.

Messrs. LOTHROP & WOLFE, for the appellants:

Declarations and admissions, when deliberately made, are the most satisfactory character of evidence; but casual remarks or expressions, carelessly made, are unsatisfactory and inconclusive. *Frizell* v. *Cole,* 29 Ill. 465; *Railway Co.* v. *Button,* 68 id. 409; *Straubher* v. *Mohler,* 80 id. 21; *Hartley* v. *Lybarger,* 3 Bradw. 554.

In a proceeding to redeem from a deed given as a mortgage, the statements and admissions of parties, favorable to their own interests, should be received with great caution, because they may be readily fabricated or distorted. *Aborn* v. *Burnett,*

2 Blackf. 101; *Cornell* v. *Erill,* 4 id. 67; *Miller* v. *Thomas,* 14 Ill. 430.

If the relation of debtor and creditor still remains, the conveyance must be regarded as a mortgage. 1 Jones on Mortgages, 264; *Sutphen* v. *Cushman,* 35 Ill. 187.

In equity, the intention of the parties that the deed shall stand as a security stamps it infallibly as a mortgage. *Tillson* v. *Moulton,* 23 Ill. 648; *Heath* v. *Williams,* 30 Ind. 495; Adams' Equity, 111; Willard's Eq. Jur. 432.

The intention of the parties must control. (*Ewart* v. *Walling,* 42 Ill. 453; 1 Jones on Mortgages, 258, 263, 265.) And circumstances, as much, if not more, than the declarations of the parties, show the intent. 1 Jones on Mortgages, 267; *Enner* v. *Thompson,* 46 Ill. 215; *Sutphen* v. *Cushman,* 35 id. 187; *Lindauer* v. *Cummings,* 57 id. 195.

The retention of the evidences of indebtedness by the grantee, uncancelled and unsatisfied, will, in equity, create the deed a mortgage. 1 Jones on Mortgages, 267; *Montgomery* v. *Chadwick,* 7 Iowa, 114.

In proceedings of this character it never escapes the eye of the court that the debt is not satisfied by the conveyance. *Smith* v. *Cremer,* 71 Ill. 185; *Sutphen* v. *Cushman,* 35 id. 186; 1 Jones on Mortgages, 167, 269; *Coats* v. *Woodworth,* 13 Ill. 656; *Bartling* v. *Brasuhn,* 102 id. 444; *Miller* v. *Thomas,* 14 id. 429; *Hanford* v. *Blessing,* 80 id. 190; *Colwell* v. *Woods,* 3 Watts, 188; *Wharp* v. *Howell,* 5 Birney, 503; 2 Leading Cases in Eq. (part 2,) 444; *Robinson* v. *Crosby,* 2 Edw. Eq. 138; *Robinson* v. *Crosby,* 1 Paige, 480; 1 Hal. Rep. (Sumner,) 350; 3 Am. Chy. Dig. 28; *Preshbaker* v. *Feeman,* 32 Ill. 484.

When the intent is doubtful, the courts will construe deeds to be mortgages, and are not inclined to construe them as conditional or absolute sales. 1 Jones on Mortgages, 279; *Bishop* v. *Williams,* 15 Ill. 553; *Miller* v. *Thomas,* 14 id. 428; *Pensoneau* v. *Pulliam,* 47 id. 58; *Bright* v. *Wagle,* 3 Dana, 253; 3 Am. Chy. Dig. 22.

Matters in bar of the defence, occurring subsequently to the filing of the original bill, are properly set up in a supplemental bill. *Burke* v. *Smith,* 15 Ill. 158; *Mix* v. *Beach,* 46 id. 311; *Fahs* v. *Roberts,* 54 id. 192.

It is a familiar rule that a former adjudication is a bar as to all matters therein properly involved, and which might have been raised and determined in it. *Rogers* v. *Higgins,* 57 Ill. 244; *Lathrop* v. *Hayes,* 57 id. 279; *Briscoe* v. *Lloyd,* 64 id. 33; *Town of Lyons* v. *Cooledge,* 89 id. 529.

Mr. J. L. RAY, and Mr. J. O. CUNNINGHAM, for the appellees:

The judgment in the distress suit was not evidence on the question of tenancy, as that was not put in issue or involved. The only issue was, whether there was rent due. Wells on Replevin, 401; Taylor on Landlord and Tenant, 557; *Bloomer* v. *Juble,* 8 Wend. 448; Freeman on Judgments, 222.

Deeds absolute in form, made, acknowledged and delivered, the law presumes to be what they purport to be,—absolute conveyances. *Sharp* v. *Smitherman,* 85 Ill. 153; *Hancock* v. *Harper,* 86 id. 445.

Where deeds like these, absolute in form, are claimed to be mortgages only, the party alleging such a character must sustain his claim by evidence sufficiently preponderating to overcome this presumption of the law. Loose, indefinite and unsatisfactory evidence will never suffice. *Wilson* v. *McDowell,* 78 Ill. 517; *Hancock* v. *Harper,* 86 id. 446; *Sharp* v. *Smitherman,* 85 id. 153; *Lindauer* v. *Cummings,* 57 id. 195; *Remington* v. *Campbell,* 60 id. 516; *Dwen* v. *Blake,* 44 id. 135; *Sutphen* v. *Cushman,* 35 id. 186; *Low* v. *Graff,* 80 id. 360; *Price* v. *Karnes,* 59 id. 276; *Magnusson* v. *Johnson,* 73 id. 156; *Knowles* v. *Knowles,* 86 id. 1; *Clark* v. *Finlon,* 90 id. 245; *Bartling* v. *Brasuhn,* 102 id. 441; *Shays* v. *Norton,* 48 id. 100; *Taintor* v. *Keys,* 43 id. 332.

Evidence of a parol agreement between parties, to the effect that a deed absolute in form was actually intended as a mort-

gage, is not sufficient to establish such a claim, unless facts and circumstances in evidence also concur in showing this fact, and in showing the actual relation of debtor and creditor to exist between the parties. *Sutphen* v. *Cushman,* 35 Ill. 187; *Davis* v. *Hopkins,* 15 id. 520; *Bishop* v. *Williams,* 18 id. 101; *De Wolf* v. *Strader,* 26 id. 225; *Knowles* v. *Knowles,* 86 id. 1; *Taintor* v. *Keys,* 43 id. 332.

If the deeds were at first intended as mortgages, made to secure debts then due, and to secure future advancements, then we say that the acts of the parties, and Bentley's oft repeated declarations, show an abandonment of that claim or character, and a cancelment of that secret agreement. This is especially true where, as here, the rights of third parties have intervened. *Maxfield* v. *Patchen,* 29 Ill. 42; *Ferguson* v. *Tallmadge,* 20 id. 599; *Carpenter* v. *Carpenter,* 70 id. 457; *Clark* v. *Finlon,* 90 id. 245; *Wyncoop* v. *Cowing,* 21 id. 570.

The evidence adduced by complainants in this case shows rather a contract to repurchase the lands. Especially is this true of the admissions by O'Bryan. Such being the fact, the decree dismissing the bill was proper. *Pitts* v. *Cable,* 44 Ill. 103; *Hanford* v. *Blessing,* 80 id. 188.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

The complainants in this case contend that their conveyances of the lands to O'Bryan, though absolute in form, are only a security in the nature of a mortgage. It appears that the complainants, and part of the time another brother, David Bentley, were partners, and interested as such in the lands in dispute, though the title to one tract stood in Joseph J. Bentley, and the other in Benjamin Bentley; that the partnership business was conducted mainly by Joseph J., and that in conducting the business, (principally farming,) debts were contracted, and both tracts of the land were mortgaged or conveyed by trust deed to one Harmon, to secure a loan

of $2250, which was used to discharge such debts, and otherwise, in the partnership business; that further indebtedness was contracted in the business to divers persons, for which notes of the Bentleys were given, upon nearly all of which O'Bryan was security; that O'Bryan had paid one or more of these security debts, for which complainants, on December 7, 1878, were owing him, besides other unsettled accounts between them; that complainants, and O'Bryan with them, were being pressed by the creditors of the Bentleys, judgments were taken and others threatened, and that on December 7, 1878, complainants conveyed the lands to O'Bryan by warranty deeds, but no money or thing of value passed from O'Bryan to the complainants as a consideration for such conveyances. The only consideration for the conveyances was the agreement of O'Bryan with complainants at the time, but what that agreement was is the subject of dispute in this cause. Shortly after making these conveyances the partnership of the Bentleys was dissolved, and Benjamin and David Bentley left the farm, Joseph J. Bentley remaining in the exclusive occupancy and apparent exclusive control of the farm up to the filing of this bill, and who paid and delivered to O'Bryan, from time to time thereafter, both money and grain. O'Bryan, after such conveyances, paid, or caused to be paid, a large part of the complainants' indebtedness, taking receipts to himself, and retaining old notes and mortgages taken up by him.

The complainants contend that their deeds to O'Bryan were mortgages, made with the express agreement that they should be security to O'Bryan for what complainants then owed him, and for future advances to be thereafter made by O'Bryan in paying off complainants' debts, and that Joseph was to remain upon the farm, pay a sum each year sufficient to pay interest and the annual taxes, and have five years in which to discharge the indebtedness and redeem the land from the mortgage lien. The defendants claim that the

deeds are absolute conveyances, made in pursuance of an agreement to sell the land to O'Bryan at $30 per acre, to be paid by O'Bryan in taking up complainants' indebtedness; that if the debts were less than the price, the balance should be paid to Joseph J. Bentley by O'Bryan, and if more, Bentley was to repay such excess to O'Bryan, and that at the same time a separate agreement was made between O'Bryan and Joseph J. Bentley for the leasing of the land to the latter for one-third of the crops raised on the same, and that Joseph J. has since occupied said land under such agreement for renting.

To estop the defendant O'Bryan from setting up and claiming the relation of landlord and tenant between him and Joseph J. Bentley, and that the latter was to pay rent for the land, complainants, by their amended supplemental bill, set up a judgment in favor of the defendant, in a proceeding by distress for rent, brought by O'Bryan, against said Joseph J. Bentley. The circuit court sustained a demurrer to this amended supplemental bill, and this is assigned for error. Upon the hearing the complainants offered in evidence the record in the distress proceeding as a bar to the defence set up, which the court refused to admit, and this is also urged as an error. We think there was no error in either ruling of the court. A proceeding by distress for rent may involve two issues,—that is, whether the relation of landlord and tenant exists, and whether any rent is due. The proceeding in this case was commenced on September 12, 1882, by O'Bryan, against Joseph J. Bentley, and was tried after the conveyance to Rice. It was brought to recover rent claimed to have accrued before the conveyance to Rice. To the distress warrant, as amended, the defendant therein pleaded that he was not indebted in manner and form as alleged in said warrant, upon which issue was taken. There was no plea denying the demise, and the verdict found that there was no rent due the plaintiff at the time of suing out the distress warrant. The judgment of the court was to the same

effect. The verdict might have been the result of a finding that the rent had not matured, or had been paid, or that a deed of the lands to Rice before the rent was due, transferred O'Bryan's rights to him. The verdict and judgment can not be regarded as an estoppel upon O'Bryan to claim that Bentley was his tenant before he conveyed to Rice. They were not even evidence in favor of Joseph J. Bentley upon the real issue involved in his bill. They could not afford any evidence that complainants' deeds were given merely as securities for the payment of money.

As to the conveyance of Benjamin Bentley to O'Bryan, of his eighty-acre tract, there can be but little doubt that it was, and is, an absolute deed. He testifies as follows: "O'Bryan *first* wanted a mortgage, and then the mortgage matter *fell through* for some reason, and then he proposed taking a deed. O'Bryan made a statement to me that if my brother Joseph should stay on the farm and redeem, he would throw off $500. The arrangement was for him (O'Bryan) to see that the indebtedness was paid off, and release me. That was all the *arrangement* we had on the subject." He afterwards states that he derived his knowledge of the arrangement from what his brother said. His deed to O'Bryan was made subject to the incumbrances then on the land, and upon making the same he left the State, and has ever since made his home in Pennsylvania, and he has never claimed any right to redeem, or that he ever had any agreement with O'Bryan giving him a right to redeem. His subsequent conveyance to his brother Joseph, without any consideration, gives him no right of redemption. As to this tract there was no error in dismissing the bill.

Where a deed for land on its face appears to be an absolute and unconditional conveyance, and is acknowledged and delivered, the law will presume, in the absence of proof showing the contrary, that it is what it purports to be,—an absolute conveyance. (*Sharp* v. *Smitherman*, 85 Ill. 153; *Hancock* v.

*Harper*, 86 id. 445.)   Where a warranty deed for land abso-
lute in form is claimed to be a mortgage only, the party
alleging such a character must sustain his claim by evidence
sufficiently clear and satisfactory to overcome this presump-
tion of the law.   Loose, indefinite and unsatisfactory evi-
dence will never suffice.   *Wilson* v. *McDowell,* 78 Ill. 517;
*Lindauer* v. *Cummings,* 57 id. 195; *Remington* v. *Campbell,*
60 id. 516; *Dwen* v. *Blake,* 44 id. 135; *Sutphen* v. *Cushman,*
35 id. 186; *Low et al.* v. *Graff et al.* 80 id. 360; *Price* v.
*Karnes,* 59 id. 276; *Magnusson* v. *Johnson et al.* 73 id. 156;
*Knowles et al.* v. *Knowles,* 86 id. 1; *Clark* v. *Finlon,* 90 id.
245; *Bartling et al.* v. *Brasuhn et al.* 102 id. 441; *Shays et al.*
v. *Norton,* 48 id. 100; *Taintor* v. *Keys et al.* 43 id. 332.

It is not necessary to review the evidence on this branch
of the case.   It is sufficient to say that in our opinion it
does not overcome the presumption of law that the deeds are
absolute conveyances.   It may be further observed that the
declarations and admissions of O'Bryan, made after his con-
veyance of the premises to Rice, not in the presence of Rice,
can not be received and considered as against Rice.   The
law is well settled that declarations of a grantor when the ·
grantee is not present, can not be admitted to invalidate his
deed or to affect the grantee.   *Barrett* v. *French,* 1 Conn.
354; *Pettibone* v. *Phelps,* 13 id. 450; *White* v. *Wheaton,* 16
id. 535.

Perceiving no error in the record, the decree of the circuit
court is affirmed.

*Decree affirmed.*